AMERICAN CAN CO. v. HICKMOTT ASPARAGUS CANNING CO.

(Circuit Court, N. D. California. March 20, 1905.)

No. 13,345.

1. PATENTS—INFRINGEMENT—COMBINATION CLAIMS.

In a combination claim of a patent, every element specified by the patentee, either directly or by a reference to the specification, which carries such element into the claim, must be deemed material; and to constitute an infringement of such claim the infringing device must contain every one of its elements, or its equivalent.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 376, 387.]

2. SAME—EQUIVALENTS.

A device in one mechanism, to be the equivalent of the device in another, must perform the same function and perform it in substantially the same manner.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 24.]

3. SAME—PIONEER INVENTIONS—IDENTITY OF MEANS.

To sustain a claim of infringement of a patented machine, three things must be found: First, identity of result; second, identity of means; third, identity of operation. The fact that an invention is of a primary character does not entitle the patentee to all means for accomplishing the same result.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 370–381.]

4. SAME—CAN MAKING AND SOLDERING MACHINES.

Neither the Jordan patent, No. 436,792, for a can body making machine, the Norton patent, No. 365,316, for a can cap soldering machine, nor the Holden and Brown patent, No. 598,567, for a can body machine, is infringed by the machine of the Eldridge patent, No. 712,998, for a can body forming machine.

In Equity. On petition for rehearing or a new trial.

John H. Miller, for complainant.
Wheaton & Kalloch, for defendant.

MORROW, Circuit Judge. This is a suit for the infringement of three letters patent, namely: No. 436,792, issued to Peter Jordan, September 23, 1890, for a can body making machine. This patent contains 91 claims. No. 365,316, issued to E. Norton, June 21, 1887, for a can cap soldering machine. This patent contains 31 claims. Patent No. 598,567, issued to Edward B. Holden and Charles M. Brown, February 28, 1898, for a can body machine. This patent contains 41 claims. The total number of claims in these patents is 163. These patents are owned by the complainant. The defendant owns, and at the commencement of this suit was threatening to use, the machine made under patent No. 712,998, issued to John Eldridge, November 4, 1902, for a can body forming machine. This patent contains 6 claims.

The question before the court upon the hearing of this case was whether a machine constructed under the Eldridge patent infringed the patents of the complainant with respect to certain specified claims. The claims of the Jordan patent alleged to have been infringed are claims 58, 59, 60, 61, 62, 63, 64, 65, 69, 78, 79,

80, 81, 87, and 88—fifteen in all. In the motion for rehearing complainant has referred to claims 64 and 69, contending that the action of the court in holding that these claims have not been infringed was sufficient to entitle complainant to a rehearing. The claim of the Norton patent alleged to have been infringed is claim 31. The action of the court in holding that this claim had not been infringed is relied upon in the motion for a rehearing. The claims of the Holden and Brown patent alleged to have been infringed are claims 28, 29, 30, 31, and 32—five in all. In the argument in support of the motion for rehearing, complainant refers to claim 29 of this patent as having been infringed.

In deciding the case in favor of the defendant, the court held that there was no infringement of any of these claims. In support of the petition for a rehearing elaborate briefs have been filed by counsel on both sides. The first claim to which the court's attention is now directed in this motion is claim 64 of the Jordan patent. The claim is as follows:

"The combination, with a rotatable horn furnished with means for clamping one edge of the sheet, of a stop blade or device for engaging the opposite end of the sheet, substantially as set forth."

The complainant contends that this claim consists of three elements, namely: (1) A rotatable horn, (2) furnished with means for clamping one edge of the sheet, and (3) a "stop blade or device for engaging the opposite end of the sheet." Another analysis would resolve this claim into two elements, as follows: (1) A rotatable horn, furnished with means for clamping one edge of the sheet, and (2) a stop blade or device for engaging the opposite end of the sheet. To understand these elements, the claim must. be read with reference to the mechanism of a can body forming machine, and the sheet referred to in the claim is the blank sheet of tin out of which the can body is formed. The object of complainant's invention, as declared by him in his application for a patent, was to provide a machine which would automatically feed the blank sheet of tin, form it into a can body, and interlock and fold its edges into the usual lock seam, ready for soldering. Such a mechanism turns one of the edges of the blank into a hook, and then turns the opposite edge into a similar hook, and finally interlocks and folds the two hooked edges together into a locked seam. As before stated, claim 64 of complainant's patent appears to have two elements; but, whether the claim has two or three elements, it is what is known as a combination claim. A combination claim is thus described by the Supreme Court in Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 244, 27 L. Ed. 979:

"In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim, and privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

A claim must always be considered with reference to the specifications and the mechanism to which it relates; otherwise, in some instances, the claim would be void for want of invention. The Circuit Court of Appeals of this circuit, referring to claims similar to the one now under consideration, in Jensen Can-Filling Machine Co. v. Norton, 67 Fed. 236, 242, 14 C. C. A. 383, 390, said:

"These are all combination claims, and each is broad enough to include every imaginable style of mechanism for forming can bodies and soldering the side seams thereof. So regarded, they would all be void for failure to describe any patentable invention. They must necessarily be limited to include only the particular devices specified."

To which, of course, should be added the qualification: "or mechanical equivalent or substitute."

In a patented combination, a device in one mechanism, to be the equivalent of a device in another, must perform the same function (Rowell v. Lindsay, 113 U. S. 97, 103, 104, 5 Sup. Ct. 507, 28 L. Ed. 906.), and perform that function in substantially the same manner, as the thing of which it is alleged to be an equivalent. Walker on Patents, § 354.

Comparing the mechanism described in claim 64 of the Jordan patent with the mechanism described in the defendant's patent, in the light of these rules, what do we find? The first element of claim 64 is "a rotatable horn, furnished with means for clamping one edge of the sheet." In complainant's patent this is the rotatable horn, G, with the former, F, and is described as follows:

"The edge folder, F, has a lip or blade, f, which operates to clamp the edge of the sheet against the opposing die or jaw, $F^1$, which is or should be correspondingly recessed. The former, F, is pivoted at $f^1$ to the horn, G, and it is operated by a sliding wedge or bar, g, which, like the former, F, is mounted in a suitable recess, $g^1$, in the horn, G."

This former, F, is used in putting a second hook upon the blank, and the device works in connection with the horn, G.

Complainant contends that this element of complainant's patent is found in defendant's machine, being the undercut edge, 10, and the spring-actuated bar, which presses the hook edge of the sheet into engagement with said undercut edge. But in defendant's machine this undercut edge and the spring-actuated bar are used in putting the first hook on the blank, which in complainant's machine is an operation performed elsewhere and at a distance from the rotating horn. Obviously, the defendant's machine for putting the first hook on the blank is a different means from that used by the complainant for putting the first hook on the blank, and is not a substitute or an equivalent for that feature of complainant's mechanism.

The second element of claim 64 is "a stop blade or device for engaging the opposite end of the sheet." In complainant's patent this is the stop blade, H, and is described as follows:

"H is a stop blade, which engages the first hook or edge fold, $x^1$, as the blank is being wrapped around the horn by the rotation thereof. This stop blade is arranged near the periphery of the horn, so that it will surely engage the first hook or fold, $x^1$, and hold it in position for interlocking with the second hook or fold, $x^2$, of the blank, as shown in Fig. 12. The stop

blade, H, is preferably mounted movably, so that it may be moved toward or from the horn, as desired. I prefer to mount this stop blade on an arm or lever, H¹, pivoted at h to the frame of the machine, so that it may be swung to or from the horn."

This stop blade or device is intended to engage the first hook of the sheet, and stop this first hook in its proper position.

Complainant contends that it finds this element in the defendant's machine, in the plate, f. Now, what is the object of the plate, f, in defendant's machine? It is not to stop anything, but to hold against the horn the end of the sheet upon which the second hook is to be formed. In other words, we do not find in defendant's machine the stop blade or device, which is one of the elements of the sixty-fourth claim of the Jordan patent. But this is not all. In complainant's machine the stop blade is preferably mounted on the arm or lever, H¹. In the specifications this arm or lever, H¹, is required to perform a function described in the claim as a "means for clamping one edge of the sheet." The specifications are as follows:

"The arm, H¹, also preferably carries a curved shoe or presser device, H², which may be made integral with the stop blade, H, and the pivoted arm, H¹. The arc of this shoe should correspond with that of the horn. The purpose of this shoe is to press the inner end of the blank, x, which carries the first and now outwardly projecting hook, x¹, flat against the horn during the operation of interlocking the second and now inwardly projecting hook, x², with the first hook, x¹; said second hook, x², hooking over the first hook, x¹, as is clearly indicated in Fig. 12."

There are other devices described in the specifications for pressing the blank sheet against the horn, viz., the guides or shoes, K and L, and all three are described as follows:

"The guides or shoes, H², K, L, surrounding the horn, serve to hold and bend the blank around the horn as the horn is rotated; one edge of the blank being clamped between the dies."

The defendant has no mechanism of this character in his machine, and for this reason there is no infringement.

Claim 69 is as follows:

"The combination, with a rotatable horn furnished with means for clamping the edge or end of the sheet thereto, of a device for holding the opposite edge or end of the sheet against the horn, and means for interlocking the hooks on the blank, substantially as specified."

Counsel for complainant contends that this claim is the same as claim 64, with the addition of the element, "means for interlocking the hooks on the blank." The patent, in referring to this element, says:

"H is a stop blade, which engages the first hook or edge fold, x¹, as the blank is being wrapped around the horn by the rotation thereof. This stop blade is arranged near the periphery of the horn, so that it will surely engage the first hook or fold, x¹, and hold it in position for interlocking with the second hook or fold, x², of the blank, as shown in Fig. 12."

Now, what is the use of this stop blade? It engages with the first hook and holds it in position to assist it in interlocking with the second hook. If the stop blade is not in the Eldridge machine —and we have already explained that it is not—and for that reason

it is not infringed, it necessarily follows that the blade is one of the elements in the combination of claim 69, and that that claim is not infringed. The result of this comparison is that there is that lack of identity between the two machines which constitutes in law an infringement. To sustain a claim of infringement of a patented machine, three things must be found: First, identity of result; second, identity of means; third, identity of operation. The result of the work of complainant's machine, as set forth in these two claims, is to put a second hook on the blank sheet of tin (the first hook having been put on by other mechanism) and fold the edges into the usual lock seam. The result of the work of the defendant's machine is to put both hooks on the sheet of tin and fold the edges into a lock seam. It is therefore only with respect to the last hook and the folding into a seam that there is an identity of result, and, as before explained, there is a lack of identity in the means used to produce the can body, and also a lack of identity in the operation of these two machines.

But complainant contends that this is a narrow construction of these two claims; that the evidence shows that Jordan was the first to devise and introduce into the art a rotary can body forming horn, and, this being so, these claims should receive a broad and liberal construction; and that all subsequent machines which employ substantially the same mode of operation are infringements. This rule of law for which the complainant contends is well established, and is not in controversy. The complainant, however, cites the case of Morley Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715, as applying the doctrine in a case similar in all respects to the present case. In that case the Supreme Court said:

"Morley, having been the first person who succeeded in producing an automatic machine for sewing buttons of the kind in question upon fabrics, is entitled to a liberal construction of the claims of his patent. He was not a mere improver upon a prior machine, which was capable of accomplishing the same general result, in which case his claims would properly receive a narrower interpretation. This principle is well settled in the patent law, both in this country and in England. Where an invention is one of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result are infringements, although the subsequent machine may contain improvements in the separate mechanism which go to make up the machine."

It will not be necessary to analyze that case and point out wherein it differs from the present case. It will be sufficient to call attention to the fact that the court found that in all three of the main mechanisms used in the Lancaster machine the means employed in it were substantially equivalents of those employed in the Morley machine, and that the mechanical devices used by the defendant were known substitutes or equivalents for those employed in the Morley machine to effect the same result. In referring to Morley's claims, the court said:

"Those claims are not for a result or effect, irrespective of the means by which the effect is accomplished. It is open to a subsequent inventor to accomplish the same result, if he can, by substantially different means."

And that is what the court thinks was done in this case. The defendant has accomplished the same result with respect to the last hook upon the blank tin and the folding of the two hooks into the lock seam. But this has been accomplished by substantially different means, and the operation as a whole is not identical in the two machines. The pioneer character of complainant's machine does not entitle it to all the means for accomplishing the same result.

The charge that the defendant has infringed claim 31 of patent No. 365,316, for a can body soldering machine, is also without foundation. Claim 31 reads as follows:

"The molten solder containing vessel, furnished with a discharge valve and mechanism for operating said valve by contact with the can, substantially as specified."

The specifications describe this mechanism as follows:

"H, represents a vessel for containing molten solder. It is automatically movable up and down, and the lower end of this vessel serves as a soldering iron to distribute the solder over the seam. This molten solder vessel is moved up and down to bring the same into contact with the seam to be soldered when the can is presented under the same by the carrier. The solder vessel may be moved up and down by any suitable means or mechanism. It may, for example, be automatically operated by the same mechanism as that employed to operate the stirrer bars, G."

The device so described relates to mechanism for soldering caps on filled cans. Peter Kruse, a witness called for the defendant, testified, with respect to this device, that, while the caps are being soldered on the cans, the cans have a rotatable motion; that the seam that is soldered is circular, and that the mechanism could solder no other seam; that the side seam of the can body could not be soldered by this device. Referring to the defendant's mechanism, the witness testified that, while the cans were being soldered by that machine, they did not have a rotary motion; that the machine had never had a movable molten solder vessel provided with a valve of any kind. The witness then described in detail the mechanism of defendant's soldering apparatus, from which, and from an examination made by the court, it appears that, compared with complainant's machine, there is lacking that identity of means, identity of operation, and identity of result necessary to constitute an infringement.

Complainant contends that claim 29 of patent No. 598,567 has also been infringed. This claim is as follows:

"In a can body machine, the combination with a series of soldering irons, arranged in line above a soldering horn along which the can bodies are moved, of a soldering pot located in advance of the soldering irons, heating apparatus for heating the irons and pot, and solder feeding mechanism for feeding the solder into the pot, substantially as described."

The witness Kruse testified, with respect to this device, that it soldered the outside seam of the can only, while the defendant's machine solders both the inside and outside seam at the same time; that in complainant's machine wire solder was used; that the soldering boxes do not contain melted solder; that defendant's

apparatus does not contain any of these boxes or a solder pot; and that there is no place in the defendant's machine where either these boxes or the solder pot could be applied. The court examined these devices at the trial, and further consideration of the mechanisms convinces the court that there is no infringement of complainant's patent by any part of defendant's mechanism.

Complainant's motion for a new trial is denied.