**ANAKIN LOCK WORKS v. DILLON LOCK WORKS et al.**

(District Court, N. D. Iowa. C. D. August 3, 1922.)

No. 35.

Patents ☞328—1,021,651, for improvement in auxiliary safe locks, held valid, but not infringed.

The Anakin & Shealy patent, No. 1,021,651, for the combination of a safe with a main locking mechanism and inactive auxiliary locking means and a flexible connection, designed to operate the auxiliary locking means in case of tampering with the main locking mechanism, *held* valid, but not infringed by a device designed merely to obstruct the withdrawal of the bolts of the main locking mechanism on destruction of the combination.

In Equity. Suit by the Anakin Lock Works against the Dillon Lock Works and another. On exceptions to the master's report. Report approved, and decree entered dismissing the bill.

Munday, Clarke & Carpenter, of Chicago, Ill., John N. Hughes, of Des Moines, Iowa, and Carl S. Lloyd, of Chicago. Ill., for plaintiff.

Bair & Freeman, of Des Moines, Iowa, and J. Ray Files of Fort Dodge, Iowa, for defendants.

SCOTT, District Judge. The plaintiff, Anakin Lock Works, an Iowa corporation with place of business at Chicago, Ill., brings this suit against the defendant William C. Dillon, doing business under the trade-name of the Dillon Lock Works, at Ft. Dodge, Iowa, to restrain the defendant from infringing United States letters patent No. 1,021,-651, issued to Arthur E. Anakin and William J. Shealy March 26, 1912, and for accounting and damages. Plaintiff alleges that Anakin and

Shealy were the original first and joint inventors of certain new and patentable improvements in auxiliary safe locks, more particularly set forth and claimed in letters patent No. 1,021,651; that said Anakin and Shealy on November 22, 1911, duly filed in the Patent Office of the United States an application for letters patent for said invention, and that on March 26, 1912, letters patent numbered as aforesaid were duly and regularly granted; that on January 30, 1913, an undivided one-third interest in said patent was regularly assigned by Anakin and Shealy to Samuel McCane, and assignment duly registered February 3, 1913; that on the same day said patent and all rights thereunder were, by written assignment regularly recorded in the United States Patent Office February 3, 1913, assigned and transferred to the Cleveland Lock Works, an Illinois corporation; that said patent and all rights thereunder were by written assignment on July 12, 1916, transferred to John H. Taft; that said patent and all rights thereunder were by written assignment on April 18, 1919, transferred to Anakin Lock Works, an Iowa corporation, plaintiff; and that plaintiff has since April 18, 1919, been the owner of said patent and all rights thereunder.

The defendant, answering, pleads three defenses: (1) That plaintiff has no title to the patent; (2) that the patent sued on is invalid, for want of invention; and (3) that defendant's device does not infringe the patent in question.

Upon issue joined the cause was referred to Seth Thomas, Esq., as special master, to take the testimony and to report findings of fact and conclusions of law. The testimony was taken, and the special master has reported findings of fact and conclusions of law in the form of an opinion, and ultimately found:

"(1) That the plaintiff is at least the equitable owner of the Anakin & Shealy patent, No. 1,021,651, and as such owner is entitled to maintain this suit.

"(2) That claim 5 of said patent is valid as construed.

"(3) That the said claim is not infringed by the defendant's device."

To the master's report the plaintiff has filed 11 separate exceptions, all of which question the accuracy of the special master's third finding; i. e., that plaintiff's patent was not infringed.

The case, as tried before the special master and as now pending on exceptions to the master's report, presents three questions: (1) Has plaintiff established title to the patent of such character as to qualify it to maintain this suit? (2) Is the fifth claim of plaintiff's patent, No. 1,021,651, valid as embodying invention? And (3) is the fifth claim of plaintiff's patent referred to infringed?

In the opinion of the court the special master correctly found the plaintiff had established title to the patent in question and was qualified to bring the suit, and inasmuch as no exception has been filed to the report of the master upon this issue, that matter may, for the purpose of this opinion, be considered disposed of.

The next question is as to the validity of the plaintiff's patent. The controversy involves only the fifth claim of the patent referred to, which is as follows:

"5. In combination, a safe comprising a door having a main locking mechanism therefor, inactive auxiliary locking means for said safe, arranged to

co-operate with the door to lock the same closed independently of the main locking mechanism, and a flexible connection secured to the auxiliary locking means at one end, extending across the main locking mechanism in the path of abnormal movement thereof; said connection being permanently connected at its opposite end to the door aforesaid."

## This claim plaintiff's counsel analyzes thus:

"The claim is for a combination of elements, one of which is new in its relation to the others. The first elements of the claim are—(1) a safe; (2) a door; (3) a main locking mechanism; (4) a normally inactive auxiliary locking mechanism. These are listed merely as present items, and their particular construction and arrangement are unimportant, both actually and in a legal sense, to the invention, and to the scope of the claim. In other words, the presence of any sort of a door, any sort of a safe, any sort of a main locking mechanism, and any sort of a normally inactive auxiliary locking mechanism satisfies the requirement of the claim. It is only necessary that all four items be present in some form or other. The last, or fifth, element of the claim presents a different circumstance. The arrangement of this element in connection with the other is actually and therefore also in point of law) important, and certain restrictions in the matter of this arrangement are recited.

"It is believed desirable to repeat the definition of this fifth and last element of this claim: 'and a flexible connection secured to the auxiliary locking means at one end and extending across the main locking mechanism in the path of abnormal movement thereof, said connection being permanently connected at its opposite end to the door aforesaid.' In the matter of this last element the first restriction is that the connection be flexible; the second restriction is that this connection be secured to the auxiliary locking means at one end; the third is that it extend across the main locking mechanism in the path of its abnormal movement; and the fourth is that the connection at its other end be permanently secured to the door. These are the four limitations upon this element. They are definite and exact."

## Counsel for defendant analyzes the claim in the following statement:

"An analysis of the claim in issue shows that the elements thereof are as follows:
1. A safe comprising—
    a. A door, having—
        I. A main locking mechanism therefor.
2. Locking means for said safe:
    a. Inactive;
    b. Auxiliary;
    c. Arranged to co-operate with the door to lock the said door closed independently of the main locking mechanism.
3. A flexible connection,
    a. Secured to the auxiliary locking means at one end;
    b. Extending across the path of abnormal movement of the main locking mechanism (the combination box);
    c. Secured permanently to the door at the other end.

"A study of the Anakin & Shealy patent in suit shows that claims 1 to 4 (inclusive) thereof covers the specific mechanism of an auxiliary lock and controlling means therefor. Particularly, these claims are limited to a special bracket and trigger mechanism adapted to be mounted in various positions on the barrel, in order to permit the barrel to be mounted in horizontal or vertical position and still leave the trigger in such position that it may be properly operated by the wire.

"The fifth claim, it will be noted, covers an inactive auxiliary lock, broadly stated and without apparent limitations of the specific form of bracket or trigger in combination with a flexible connection extending in the path of the main locking mechanism (the combination box)."

The special master, in analyzing the claim, says:

"It is clear that the invention described in fifth claim of the Anakin & Sheatly patent, in so far as material here, consists of 'a flexible connection secured to the auxiliary locking means at one end and extending across the main locking mechanism (combination box) in the path of abnormal movement thereof; said connection being permanently connected at its opposite end to the door aforesaid.'"

For the purpose of indicating the scope and limits of the claim in question more specifically, it may be helpful to refer to certain proceedings in the Patent Office that are in evidence. The patentees in their original application made two claims based upon the element of a flexible connection as follows:

"5. In combination, a safe comprising main locking mechanism and a door supporting said mechanism, inactive auxiliary locking means for said safe, arranged to co-operate with the door to lock the same closed independently of the main locking mechanism, and means comprising a flexible connection operable upon abnormal movement of the main locking mechanism for causing actuation of the auxiliary mechanism.

"6. In combination, a safe comprising a door having a main locking mechanism therefor, inactive auxiliary locking mechanism for the door, and a flexible connection between the auxiliary locking mechanism and the door, arranged in the path of abnormal movement of parts of the main locking mechanism."

In passing upon the above claims 5 and 6, the Commissioner of Patents said:

"Claims 5 and 6 are answered in either Tislow, August 26, 1902, 707,655, safe bolt work, or Blechschmidt, Jan. 10, 1911, 931,522, safes, safe bolt work."

The patentees through their attorneys then responded:

"Claims 5 and 6 have been hereby canceled, in view of the reference cited by the Examiner, and present claim 5 is submitted, being drawn specifically to the use of a flexible connection between the auxiliary locking means and the door of the safe; said connection passing across the main locking mechanism in the path of abnormal movement thereof."

Claim 5 now in controversy was then allowed.

The master in his report further says:

"Further light is thrown upon the idea of the inventor in this claim by reference to the specifications. In the following excerpt the numeral '7' refers to the flexible [wire] connection shown on the drawings. It is there said: 'Should an attempt be made to gain unauthorized access to the safe when locked by the main locking mechanism, inward movement of the parts of the combination lock B will cause engagement thereof with the connection 7 in such way as to exert a pull on said connection, tripping the locking member, 5, and thus lock the safe door closed independently of the main locking mechanism.'"

From the foregoing it appears clear that the claim in question and any invention involved is confined to the flexible connection (wire), its position, and the idea of energizing it by the force and movement of the combination box, when disturbed by the attack of the burglar.

The defendant contends that the conception of the claim and device of the plaintiff in question does not rise to the dignity of invention; that it involves nothing more than mechanical skill; that, considering the want of novelty of the several independent elements, any skilled mechanic learned in the art would readily adapt the means to the use

and situation. This contention is not without much force. The simplicity of the whole operation may be presented to the mind of the ordinary person by suggesting observation and contemplation of the ordinary Yale spring lock, found so frequently attached to the inner surface of the ordinary house or office door. It will be recalled that, projecting from the surface of such lock near one end is a disk-shaped knob with milled edge, by means of which one may with thumb and finger turn back the bolt against the tension of the spring, and when released, the lock being inactive, the bolt is shot. About equal distance from the other end of the lock projects a small dog or trigger, which moves vertically in a slot, and which within the lock engages a notch in the bolt to hold the bolt inactive against the spring. One turns back the bolt with the knob aforesaid, pushes up the dog or trigger, and the bolt is held inactive and the door unlocked. Now, the principle of plaintiff's device would be illustrated by mounting a wire or any flexible connection on the small trigger to pull the same and release the lock. If there were a combination on the same door, below or above the lock described, and a wire should be extended across the combination and fastened to the door at an opposite point, the driving inward of the combination by force of any kind would engage the wire and trip such lock. The question, then, would be: Would the conception of such use of a wire to trip the lock involve invention? It must be said, at least, in the language of Mr. Justice Van Orsdel in Re Coffield, 270 Fed. 695, 50 App. D. C. 259, that:

"The idea here developed is in the twilight zone between invention and mere mechanical improvement."

The court in that case, however, further added:

"We will apply the rule of the courts generally and resolve the doubt in favor of the inventor."

To do so in the present case, in the opinion of the court, carries one to the limit of the rule.

Counsel for the defendant particularly urges upon the attention of the court Sloan Filter Co. v. Portland Gold Min. Co. (8th C. C. A. 1905) 139 Fed. 23, 71 C. C. A. 460; American Laundry Machinery Mfg. Co. v. Troy Laundry Machinery Co. (C. C.) 171 Fed. 870; Brickill v. Mayor (2d C. C. A. 1901) 112 Fed. 65, 50 C. C. A. 1.

Counsel also calls to the attention of the court many other cases in their very able and exhaustive brief; but, the facts, subject, and devices being different, they are not of great assistance in solving the problem here presented. As to whether the plaintiff's device really involves invention must be determined in the last analysis upon the particular application of the means to the combination in the instant case. There are other factors, of course, to be considered; for instance, the plaintiff's device is shown to be the first of its kind to attain a real commercial success. That may, of course, be in part attributable to the opportunities and conditions of the times. Upon the whole I am inclined to resolve the second question as did the court in Re Coffield, supra, in favor of the inventor, and hold that the plaintiff's device does involve invention.

The third question to be considered is whether the defendant's struc‑ture infringes the plaintiff's patent as respects claim 5. Defendant's counsel has submitted in the brief a very accurate description of his structure, and I quote the same from the brief:

"The structure of the defendant comprises a round post mounted in the strip on the inside of the vault door, and screw-threaded for a considerable portion of its length. Screwed onto the bolt is a locking block, which stands just back of the bar, which connects the bolts of the regular locking mechanism of the door. Extended through the post at right angles thereto is an arm, having at its outer end a right-angled extension parallel with the post. Secured to said extension is a coil spring, which is also connected with the locking block, and which is adapted to yieldingly tend to hold the locking block in position in the path of travel of the bar which connects the main locking bolts, to prevent the movement of the main bolts to open position. A wire is connected with the locking block for holding it in inoperative position out of the path of the bar on the locking bolts against the pressure of said spring. This wire is extended around a pin on the combination box, and then forwardly and fastened near the front edge of the door.

"The operation of the Dillon structure is as follows: When the combination box is burned, and the wire is burned through, or when the combination box is knocked off by punching or explosion, and the wire is broken, the spring will move the locking block to operative position in the path of the bar on the main locking bolts, so that the main locking mechanism can not thereafter be opened.

"It will be noted that the plaintiff's and defendant's structures are different in the following respects:

"(1) Plaintiff uses a locking bolt in a barrel or tube adapted to be shot beyond the door and held inoperative against a spring in the barrel by a trigger; while defendant uses a block pivotally or rotatably mounted on a bolt and held inoperative by a wire.

"(2) Plaintiff's bolt coacts with the door and door frame to prevent opening the door, while defendant's device locks the ordinary bolts against unlocking movement.

"(3) Plaintiff's device is released by jerking a wire connected with his trigger for displacing the latter, while defendant's device is released by the release of the wire."

Considerable discussion is found in the briefs as to whether the plaintiff's claim should be so interpreted as to confine it to a combination with the particular elements found in its structure and the particular kind disclosed in the specifications of the Anakin & Shealy patent. In order to save the plaintiff's patent, and hold it to involve invention, the special master seems to have given it this narrow construction. The special master says:

"A claim must always be considered with reference to the specifications and the mechanism to which it relates. 'To sustain a claim of infringement of a patented machine, three things must be found: First, identity of result; second, identity of means; third, identity of operation.' American Can Co. v. Hickmott Asparagus Canning Co. (D. C.) 137 Fed. 86."

The master does not find these things present in the instant case, and reported the plaintiff's patent not infringed. It seems to me that a fair interpretation of the plaintiff's claim excludes the idea that it is infringed by the defendant's structure. Note the language employed:

"Inactive auxiliary locking means for said safe, arranged to co-operate with the door to lock the same closed, independently of the main locking mechanism."

Now, bearing in mind that the plaintiff's is a combination patent, all of the separate elements of which are old, it is seen that the plaintiff's device is intended to combine with an independent auxiliary lock which, when the main locking mechanism ceases to function, will function as a substitute. On the other hand, the defendant's structure is not a substitute for the main locking mechanism, but a substitute for only a part of that mechanism. Considerable discussion is found in the briefs as to whether the expression, "main locking mechanism," as found in claim 5, includes the bolt work of the door, or whether its interpretation should be confined to the combination alone. I think the expression as found in the claim is not susceptible of uniform interpretation. I think the expression as first used in the claim must include the bolt work, for the reason that a locking mechanism is not complete without the bolt work, for the simple reason that it will not lock anything. The combination of a safe is not a locking mechanism in itself. It is a device the purpose of which is, when set, to obstruct the retraction of the bolts of the locking mechanism. Of course, it is evident that the expression as used the second time in the claim and describing the path of the flexible connection, means the combination box; but it does not follow that the same expression previously used must have the same limit. The very context in which the expression is first set clearly indicates that the expression as there used includes the bolt work.

The first element is described as "a safe comprising a door having a main locking mechanism therefor." How could the door have a main locking mechanism complete without bolt work? It would probably have eliminated any apparent ambiguity, had the claimant used the expression "combination box," in lieu of "main locking mechanism," where that expression is last used in the claim. However, in my opinion the expression, "main locking mechanism," as used the first two times in the claim includes the bolt work. When used the third time the expression is not descriptive of any element of the combination, but is merely used as descriptive of that portion of the main locking mechanism traversed by the flexible connection. This interpretation is borne out by the plaintiff's physical structure, as well as the context of the claim. It seems to me that this very feature differentiates the structures of the plaintiff and the defendant. The plaintiff's device is "arranged to co-operate with the door to lock the same closed, independently of the main locking mechanism." It is a complete substitute for the main locking mechanism including the bolt work. On the other hand, the defendant's device functions, not to lock the door closed independently of the main locking mechanism, but to obstruct the retraction of the bolts of the main locking mechanism when the combination is destroyed. In other words, the defendant's device is designed to execute the function of the combination only. It performs the identical function when the combination is destroyed that the combination performed before its destruction, viz., obstructs the retraction of the main bolt work. The combination is therefore entirely different.

In my opinion the report of the special master should be approved, and decree entered dismissing the plaintiff's bill; and it is so ordered.