**GENERAL CHEMICAL CO. v. SELDEN CO.**

No. 4998.

Circuit Court of Appeals, Third Circuit.

Sept. 20, 1933.

Rehearing Denied Oct. 30, 1933.

R. T. M. McCready, of Pittsburgh, Pa., and W. B. Morton, Pennie, Davis, Marvin & Edmonds, Wm. H. Davis, and F. E. Barrows, all of New York City, for appellant.

Clair W. Fairbank and William R. Perkins, both of New York City, and Robert Ames Norton, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and DICKINSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below the General Chemical Company, owner of patent No. 1,371,004, applied for October 9, 1914, and granted March 8, 1921, to Franz Slama, a citizen of Austria, and Hans Wolf, of Germany, charged the Selden Company with infringement thereof. That court held the seventh claim void and the other claims not infringed. Thereupon plaintiff took this appeal.

The patent concerns the manufacture of sulphuric acid. Reference to the exhaustive opinion of the trial judge, reported in (D. C.) 60 F.(2d) 144, and to a case in this court, Monsanto Chemical Works v. Jaeger, 31 F. (2d) 188, furnishes such full information that we limit ourselves to a brief résumé.

Prior to the World War, in the manufacture of such acid, the art used a platinum asbestos catalyst, or platinum with an asbestos carrier. Platinum was both scarce and very expensive, and when the call for sulphuric acid, due to its use in explosives, became great and the substantial supply of platinum had to be secretly obtained from Russia, and as all combatant nations were drawing on that supply, it will be seen how imperative was this country's call for some other catalyst. This became a most vital factor in the successful prosecution of the war; the statement being made in the House of Representatives, by a leading member, that "the failure of our platinum supply for war purposes may result in a disaster to this country such as no man can imagine at the present time."

In the search for a remedy the president of the plaintiff, who was in charge of the Committee on Chemicals of the War Industries Board, took an active and leading part. He made a survey of the sulphuric acid industry of the country and a report thereon. He also assisted the Army Ordnance officers in determining the acid requirements for the govern-

ment's explosive program, and reported that two great plants of the government should be built in West Virginia and Tennessee. They were to use platinum.

It further appears that during the war the government referred to Professor Scott, of the plaintiff's research staff, a copy of the then pending applications of Slama and Wolf, with instructions to determine its possible value. The trial judge found as a fact that "Scott reported an efficiency of 86.2 under normal loading, which would make the catalyst commercially useless."

It will thus be seen that while the use of vanadium was suggested by patent No. 687,-834 to De Haen, and its use in connection with kieselguhr was pointed out in Slama and Wolf's applications, and they also spoke of the pressing demand for a substitute for platinum, no relief was given and both plaintiff and defendant continued to use platinum, the plaintiff until 1928, and the defendant until 1927, when it began using vanadium and kieselguhr as noted below, which is the complained infringement of the Slama and Wolf patent. On learning of the defendant's use of vanadium and kieselguhr, plaintiff got a sample of defendant's catalyst, analyzed it, and has since then followed the defendant's practice.

 We will not repeat the reasonings and finding of the court as to the difference between the use of vanadium and finely ground kieselguhr dust as outlined in the patent, as compared with the use, by both plaintiff and defendant, of vanadium with kieselguhr with other ingredients in pellet form, other than to say that we find no flaw in the trial court's reasoning or error in its finding of noninfringement. Patents are granted to promote progress in the arts, and one of the conditions of their grant is that the disclosure of their alleged invention shall be so explanatory that at the expiration of the patent the public can practice the invention.

In this case it is contended that the alleged invention was also patented in Germany and was there successfully practiced by large chemical industries. We impugn no bad faith to the present patentees in taking out their American patent, but certain it is that the instructions given in their application gave no light to the War Board in its extremity, to the plaintiff's president in his eagerness to help his country, to Professor Scott, of plaintiff's research staff, or to the management of the plaintiff company. Indeed, its first and only use of vanadium with kieselguhr was taught them, not by their patent, but by defendant's practice.

In Rohm v. Martin Dennis Co., 263 F. 388, we found an American patent, based on a German one, had instructions which did not instruct. In the present case it may well be that the alleged success of this patent in Germany may be due to some feature which was not disclosed in the application. At any rate, we are clear that the court below correctly held that this patent, instead of promoting the art, was a mere paper one whose function was words, not work, and which, if valid, must be confined to its own narrow limits. So construed, the court committed no error in holding it was not infringed.

The decree below is affirmed.