## GENERAL CHEMICAL CO. v. STANDARD WHOLESALE PHOSPHATE & ACID WORKS, Inc.

### No. 2167.

District Court, D. Maryland.

Oct. 22, 1934.

W. Brown Morton, of New York City, and R. Contee Rose, of Baltimore, Md., for plaintiff.

Charles McHenry Howard, of Baltimore, Md., and Clair W. Fairbank and Robert Ames Norton, both of New York City, for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit in which the General Chemical Company, plaintiff, charges the Standard Wholesale Phosphate & Acid Works, Inc., defendant, with infringement of Slama and Wolf patent, No. 1,371,004, for oxidation of sulphur dioxid and a catalyst or contact substance therefor, in connection with defendant's manufacture of sulphuric acid. Defendant has filed a motion to dismiss the bill of complaint on the ground that the patent in suit is void because of unreasonable delay in the filing of a disclaimer as to claim 7 of this

patent, this claim having been held invalid as a result of litigation hereinafter explained. Defendant bases its motion upon the so-called "disclaimer statutes," sections 65 and 71 of title 35, U. S. Code (35 USCA §§ 65, 71). Whether this motion should be granted or overruled is the sole question now before the court.

The text of the pertinent patent statutes upon which defendant relies is as follows: "Whenever, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, provided the same is a material or substantial part of the thing patented; and any such patentee, his heirs or assigns, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of such parts of the thing patented as he shall not choose to claim or to hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, attested by one or more witnesses, and recorded in the Patent Office; and it shall thereafter be considered as part of the original specification to the extent of the interest possessed by the claimant and by those claiming under him after the record thereof. *But no such disclaimer shall affect any action pending at the time of its being filed, except so far as may relate to the question of unreasonable neglect or delay in filing it.*" R. S. § 4917, U. S. Code, title 35, § 65 (35 USCA § 65). Italics inserted. "Whenever, through inadvertence, accident, or mistake, and without any willful default or intent to defraud or mislead the public, a patentee has, in his specification, claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the original and first inventor or discoverer, every such patentee, his executors, administrators, and assigns, whether of the whole or any sectional interest in the patent, may maintain a suit at law or in equity, for the infringement of any part thereof, which was bona fide his own, if it is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right, notwithstanding the specifications may embrace more than that of which the patentee was the first inventor or discoverer. But in every such case in which a judgment or decree shall be rendered for the plaintiff no costs

shall be recovered unless the proper disclaimer has been entered at the Patent Office before the commencement of the suit. *But no patentee shall be entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer.*" R. S. § 4922; U. S. Code, title 35, § 71 (35 USCA § 71). Italics inserted.

In support of its motion, the defendant relies upon the following sequence of events in prior patent litigation. The correctness of these chronological facts has not been controverted. June 17, 1932, claim 7 of the patent in suit (Slama & Wolf, No. 1,371,004) was held invalid, and other claims of the patent were held not to have been infringed, by the District Court for the Western District of Pennsylvania in the case of General Chemical Co. v. Selden Co., 60 F.(2d) 144. September 20, 1933, the District Court's decree was affirmed by the Court of Appeals for the Third Circuit. 67 F.(2d) 133. October 20, 1933, plaintiff filed with the Court of Appeals a petition for rehearing, but in this petition plaintiff made no claim that the Court of Appeals had erred in not reversing the District Court with respect to claim No. 7 of the patent. October 30, 1933, this petition for rehearing was denied. November 15, 1933, the mandate of the Court of Appeals went down to the District Court, affirming the latter's decree. January 30, 1934, plaintiff filed a petition for a writ of certiorari to the Supreme Court of the United States, but in this petition sought no review of the ruling that claim 7 of the patent had been declared invalid. March 5, 1934, this petition for writ of certiorari was denied, 291 U. S. 678, 54 S. Ct. 529, 78 L. Ed. 1066. April 7, 1934, plaintiff filed an application in the United States Patent Office for reissuance of the patent, but this application was not accepted as being entitled to a filing date, because found by the Patent Office to be defective in that it failed to comply with certain procedural requirements. April 13, 1934, plaintiff filed a disclaimer of claim 7 of the patent, in the United States Patent Office. August 21, 1934, the Patent Office canceled the original patent No. 1,371,004 and granted reissue patent No. 19,282.

It will thus be seen from the above chronology that 148 days elapsed between the time (November 15, 1933) when the mandate of the Circuit Court of Appeals went down, making the decree of invalidity of claim 7 of the patent final, and the time (April 13, 1934) when plaintiff filed its disclaimer. Defendant contends that plaintiff should not have de-

layed more than thirty days in filing its disclaimer after it had become aware that it had claimed more than it had invented.

Defendant asserts that its contention for a 30-day rule, so to speak, is amply supported by the Supreme Court in Ensten v. Simon, Ascher & Co., 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453, as well as by various decisions in different circuits throughout the country, notably R. Hoe & Co. v. Goss Printing Press Co. (C. C. A.) 31 F.(2d) 565; Radio Condenser Co. v. General Instrument Corp. (C. C. A.) 65 F.(2d) 458; Better Packages, Inc. v. Nashua Package Sealing Co., Inc. (D. C.) 6 F. Supp. 573; and Emery v. J. G. McCrory Co. (D. C.) 4 F. Supp. 167.

In the Ensten Case, supra, the Supreme Court affirmed the Circuit Court of Appeals of the Second Circuit, 38 F.(2d) 71 (which in turn had affirmed the District Court), to the effect that where no disclaimer was filed until approximately two years after entry of an interlocutory decree declaring a certain claim in a patent invalid, the whole patent was rendered void on account of the unreasonableness of the delay. The court sets forth the history of and reasons for the disclaimer statutes here involved. We quote in part (pages 452, 453, 455 of 282 U. S., 51 S. Ct. 207, 209):

"Under the early accepted general rule a patent with an invalid claim was wholly void, and this defect effectually barred suit upon it. Congress undertook to modify this by sections 7 and 9, c. 45, Act of 1837, 5 Stat. 193. In substance these became sections 4917 and 4922, Revised Statutes, and sections 65 and 71, title 35, U. S. C. (35 USCA §§ 65, 71). The two sections 'are parts of one law, having one general purpose, and that purpose is to obviate the inconvenience and hardship of the common law, which made a patent wholly void if any part of the invention was wrongfully claimed by the patentee, and which made such a defect in a patent an effectual bar to a suit brought upon it.' Hailes v. Albany Stove Co., 123 U. S. 582, 8 S. Ct. 262, 266, 31 L. Ed. 284; Sessions v. Romadka, 145 U. S. 29, 41, 12 S. Ct. 799, 36 L. Ed. 609. Construed together they 'enact that where a patentee claims materially more than that which he was the first to invent, his patent is void, unless he has preserved the right to disclaim the surplus; and that he may fail to preserve that right, by unreasonable neglect or delay to enter a disclaimer in the Patent Office.' Walker on Patents (6th Ed.) § 254.

"The statute is remedial; the intent is to aid the inventor free from wilful default or intention to mislead the public by permitting him to avoid the consequence of inadvertence, accident or mistake through prompt disavowal of the apparent right to exclude others from something improperly included in the words of his grant. Escape is permitted only to one who acted originally in good faith and who has complied with the prescribed conditions. * * *

"The petitioners say that after Judge Westenhaver by interlocutory decree [Ensten v. Rich-Sampliner Co. (D. C.) 13 F.(2d) 132] declared claim 2 invalid the patentee had several options. He might have made disclaimer immediately; he might have appealed from the interlocutory decree within 30 days; he might have awaited the final decree and appealed from that; he might have sued again in another Circuit and prosecuted such suit to final decree. Accordingly, they maintain that the delay which actually occurred cannot be declared unreasonable.

"Under this view a patentee having procured allowance of an invalid claim may hold it in the face of the public for years (here nearly two years) with large possible advantage to himself and much injury to others. By the assertion of his apparent monopoly he may deter others from legitimate action and seriously prejudice the public. See Miller v. Brass Co., 104 U. S. 350, 355, 26 L. Ed. 783. * * *

"In certain definitely defined circumstances and to the end that the mistaken but honest inventor may obtain relief from the old rule, the disclaimer provisions permit him to deprive the public temporarily of complete freedom from the assertion of a monopoly apparently valid, but not so in fact. When a competent court has declared his pretensions without sufficient foundation, we think good faith and the spirit of the enactment demands that he act with such promptness as the circumstances permit either to vindicate his position or to relieve the public from further evil effects of his false assertion. But for the benign provisions of the statute, such an assertion would invalidate the whole patent; and these provisions were intended to protect only those who by prompt action either seek to overturn an adverse ruling or retreat from a false position.

"When the District Court in Ohio declared claim 2 invalid the owner of the patent might have appealed to the Circuit Court of Appeals within thirty days and thus secured an

early determination of his rights. He did not choose this course but continued to hold himself out as possessor of the sole right to 'make, use and vend' under the rejected claim for nearly two years. Then he abandoned it. He made no effort promptly to vindicate what he had asserted nor did he surrender it. Thus he failed to earn the offered exemption and now he may not complain."

After a review of prior decision upon the subject, the court concludes as follows (pages 457, 458 of 282 U. S., 51 S. Ct. 207, 211): "Certainly, in this case where an appeal was taken by the defendants, it would have entailed no unreasonable hardship upon the patent owner promptly to have submitted the legality of the rejected claim for determination by the appellate court. The route to that end was obvious, easy, inexpensive. He deliberately failed to defend his assertion of right by appealing. He has been guilty of unreasonable delay and has not brought himself within the beneficent provisions of the statute."

It will thus be seen that the Supreme Court lays down no fixed rule, no definite length of time by which the delay in all cases is to be tested, but leaves each case to be determined upon its own set of circumstances. To the same effect is Minerals Separation v. Butte & Superior Mining Co., 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019, where a delay of about three and one-half months was excused, but expressly because the owner of the patent resided in a foreign country and war-time conditions interfered with communication with the Patent Office. On the other hand, the defendant here would have us adopt a strict rule allowing only thirty days from the time when the Court of Appeals of the Third Circuit affirmed the decree of the District Court for the Western District of Pennsylvania. In other words, defendant contends that plaintiff should have disclaimed by October 20, 1933, whereas plaintiff did not do so until nearly six months later, that is, April 13, 1934.

In the absence of a ruling by the Circuit Court of Appeals for the Fourth Circuit defining any specific time limit in such cases, we conclude that the reasonable and proper rule to apply in this case, and one which we believe to be entirely consonant with what the Supreme Court said in the Ensten Case, supra, is that the patentee should be permitted to withhold disclaimer of a claim which the Circuit Court of Appeals has held invalid, until a reasonable time after the expiration of the time allowed for petitions for writs of certiorari to the Supreme Court; or until a reasonable time after denial of a writ of certiorari; or until a reasonable time after affirmance of a decree, if certiorari is granted and decree affirmed. We further believe that such reasonable time after the happening of any of the aforementioned events is thirty days, at least that such additional period of time is sufficiently great under the circumstances of the present case. We are not suggesting that a thirty-day rule be made absolutely inflexible in every case, although it is highly desirable that the trial court shall adopt and adhere to, in so far as is practicable, a reasonable rule in all cases, because the rights of the general public so require, and also it is highly desirable that counsel in patent cases shall have some rule to guide them in matters before the particular court. Such a rule has been approved by the Circuit Court of Appeals for the Second Circuit. See Bassick Manufacturing Co. v. Adams Grease Gun Corp. (D. C.) 39 F.(2d) 904, Id. (C. C. A.) 52 F.(2d) 36, certiorari granted 285 U. S. 531, 52 S. Ct. 312, 76 L. Ed. 926, suit dismissed without consideration on motion of petitioner 286 U. S. 567, 52 S. Ct. 495, 76 L. Ed. 1298. See, also, R. Hoe & Co. v. Goss Printing Press Co. (C. C. A.) 31 F.(2d) 565; Radio Condenser Co. v. General Instrument Corporation (C. C. A.) 65 F.(2d) 458; Emery v. J. G. McCrory Co. (D. C.) 4 F. Supp. 167; and Better Packages, Inc. v. Nashua Package Sealing Co. (D. C.) 6 F. Supp. 573. This New York rule has been followed, in effect, in the Ninth Circuit. See Otis Elevator Co. v. Pacific Finance Corp. (C. C. A.) 68 F.(2d) 664.

Applying this test to the present case, it appears that plaintiff was entitled to wait before disclaiming until January 18, 1934; this period being computed as follows: The decree of the Circuit Court of Appeals of the Third Circuit was entered September 20, 1933. Thus, the plaintiff had ninety days from that date within which to petition for a writ of certiorari with respect to claim 7 of the patent, had it so desired. This would extend the time to December 19, 1933, and thirty days added thereto brings us to January 18, 1934. Thus, the plaintiff did not disclaim until nearly three months—to be exact, eighty-five days—had elapsed after the expiration of the time allowed. It is to be noted that in Better Packages, Inc., supra, a delay of eighty-three days beyond the time allowed was held unreasonable. Or, if we liberalize the rule and say that since a petition for a writ of certiorari was filed by the plaintiff, although

not with respect to claim 7, since that petition was not denied by the Supreme Court until March 5, 1934, it is this latter date to which the thirty days of grace should be added. If this be done, the time within which plaintiff should have disclaimed expired on April 5, 1934, so we still find that plaintiff, even under this application of the thirty day rule, is barred, although by a small margin of eight days.

It was this more liberal view which was taken by the Court of Appeals for the Second Circuit in the Bassick Manufacturing Co. Case, supra, on a somewhat peculiar state of facts where there had been six companion suits, in two of which, however, mandates were delayed because of petitions for rehearing, neither of which, however, involved the invalid claim. But the court held that had a writ of certiorari been allowed in the other cases, involving the other claims, the Supreme Court's decision as to them might have resulted in such a construction of them as would have cast doubt upon the correctness of the lower court's disposition of the one claim as invalid; and that, therefore, it was not an unreasonable delay for the patent owner to await such possibility before determining to file a disclaimer. The facts in the present case are not at all parallel, but, as above pointed out, even if the more liberal rule be applied in the present case—for which, however, we find no real justification—plaintiff is still in the position of having postponed disclaiming beyond the limit set for so doing.

The rule here adopted would seem to be consonant with the doctrine that has long been commonly approved by District Courts and Circuit Courts of Appeals that where one claim of a patent is declared invalid, the trial court may refuse a decree sustaining the others until there is a disclaimer as to the invalid one (frequently required to be filed within thirty days of the decision of invalidity), or a prompt appeal. See Ensten Case, supra, pages 455–457 of 282 U. S., 51 S. Ct. 207, and cases cited.

■ Plaintiff contends, further, that the present case is different from, and therefore not to be controlled by the rule laid down in, the cases just analyzed, because here, unlike the situation in those other cases, except in Emery v. J. G. McCrory, supra, the bill of complaint was filed (March 22, 1933) before the Circuit Court of Appeals for the Third Circuit had rendered a decision in the other suit pending before it. As for the Emery Case, the plaintiff points out that while there, as here, the two suits were pending at the same

time, one of these suits had been dismissed more than a year previous to the filing of the disclaimer, but for which, as the court remarks (4 F. Supp. 167), "there might be some force in this contention. * * * *" But we think the proper way to view such a situation is that adopted by the Court of Appeals for the Second Circuit, in R. Hoe & Co. v. Goss Printing Press Co., supra, where the court said, in explaining the logical result of the application of the thirty day rule there adopted, 31 F.(2d) 565, 566: "The patentee * * * should be as free to withhold his disclaimer, until his appeal to the Supreme Court is decided, as he is upon appeal to this court from the decree of the District Court.

"The plaintiff at bar goes further, however, arguing that, even after denial of an application for certiorari, the patentee should not be obliged to disclaim. It argues that the Circuit Court of Appeals of another circuit might disagree with our ruling, and the Supreme Court would then take the case on certiorari and might declare the claims valid. A disclaimer would merely destroy this right, though the defendant is protected forever by its decree, and really has no interest in the disclaimer at all. While we acknowledge the difficulty and the possibility, it appears to us that so to extend the patentee's time might result in avoiding the statute altogether. The patentee may not sue again, or, if he does, the result may be the same. It does not follow, because two Circuit Courts of Appeals have held the same way that a third will not disagree. Must the patentee disclaim at the conclusion of the second suit, or may he wait until all nine circuits have passed upon his claims? The question is at best of seasonable action, and in practice there must be some end, short of exhausting all conceivable remedies. When the patent has once passed through all the courts then available, the statute should have its effect; else the putatively invalid claims may remain as scarecrows, preserved against the bare possibility that at some future time they may come to life."

■ Plaintiff contends that the delay in the present case was fully justified on still another ground, namely, that since it had the right to invoke the section of the statute which relates to the reissue of patents (35 U. S. C. § 64 [35 USCA § 64]), and did obtain the reissue patent on August 21, 1934, it had the right to postpone disclaimer until definitive action under this reissue section, citing the two-year rule of the Supreme Court governing the question of laches in applications for reissues. See Webster Co. v. Splitdorf Co.,

264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792 and cases cited.

Suffice it to say that if this theory be sound, it could be carried to the point of entirely vitiating, at the will of a patentee, all requirements as to disclaimer and would thereby indirectly nullify the rule which has been laid down in regard to due diligence. Plaintiff in effect argues for suspension, at the whim of the party that is required to disclaim, of any requirement so to do upon the plea that an application for a reissuance of the patent is pending. As a matter of fact, in the present case, there was no such valid application pending at the time the disclaimer was filed because, although reissue papers were filed on April 7, 1934, six days before the disclaimer was filed, they were not accepted by the Patent Office as a valid application because defective in form and substance, and as a result the application for reissue was not considered as validly filed until June 16, 1934. This fact alone might be a sufficient answer to the plaintiff's contention. But the distinction between disclaimers and reissues is fundamental. Resort to the reissue provisions of the law do not dispense in a suit of this kind with the obligation seasonably to disclaim. The defect which the disclaimer is intended to remove is one which in its nature is fatal to the patent. In the public interest, a patentee may not knowingly hold himself out as asserting invalid claims, once he has discovered that they are without foundation. That is to say, the sole purpose of a disclaimer is to amend excessive claims by eliminating from them the separable excess; while, broadly speaking, the sole purpose of a reissue is to correct faults of statement in the description and claim of the original patent. At common law, a patent bad in part was bad in whole and no suit could be maintained on it while in such defective condition. In 1832, the Supreme Court, in Grant v. Raymond, 6 Pet. 221, 8 L. Ed. 376, having recognized the right to amend a defective patent, the first reissue section became enacted. Section 3, Patent Act 1832, c. 162, 4 Stat. 559. This section enacted the common-law right to amend a defective patent, but in order to obtain a reissue, it becomes necessary to surrender the old patent, but in so far as claims of the original and reissue patents are identical, such surrender does not affect any action then pending, and also such surrender does not abate any cause of action then existing. See 35 U. S. C. § 64 (see 35 USCA § 64). Five years after the first reissue statute, disclaimer legislation was enacted. This legislation, while it gave the patentee additional rights by providing an inexpensive and expeditious method of removing from a patent a defect which could at first only be cured by a reissue, imposed a definite obligation upon the patentee in the form of requiring due diligence in disclaiming. The more typical examples of proper use of the reissue statute are where the description in a patent requires amendment in order to give effect to a claim, or where a claim itself demands restatement to evade obscurity, or where new claims are necessary to protect the actual invention. If the patentee applies seasonably for a reissue on any of these grounds, he may be entitled to the same, and the law as interpreted by the Supreme Court is more lenient with respect to what is due diligence on the part of the patentee in such a case (section 64, unlike sections 65 and 71 [USCA] making no mention of unreasonable neglect or delay), than with respect to what the patentee must do to disclaim before the world what he had no right to claim, if he is to protect by infringement suits what he is entitled to claim as his own invention. Robinson on Patents, vol. 2, §§ 641, 642, 649, 662; Walker on Patents (6th Ed.) §§ 254, 271.

We do not believe that such decisions as Van Kannel Revolving Door Co. v. Winton Hotel Co. (C. C. A.) 276 F. 234, upon which plaintiff seeks to rely, are to be construed as supporting plaintiff's contention because in such cases no motion was made to dismiss the bill of complaint on the ground of delay in filing a disclaimer; no disclaimer had been filed, nor was there any attempt made to file one and the question of due diligence there raised related to reissuance only.

Lastly, we come to the plaintiff's argument that it has been taken unawares by defendant's motion to dismiss the bill, because this motion was not filed until the case was called for trial on the merits, and that for this reason defendant itself is charged with laches sufficient to require a court of equity to overrule the motion. However, we are not impressed with this argument, because of the particular circumstances of the present case. The plaintiff has not in fact been prejudiced by the delayed filing of this motion. Furthermore, there is weight to defendant's argument that it was justified in its delay in filing the motion because, while plaintiff's disclaimer was officially announced to the public by the Patent Office on May 8, 1934, it was not until September 26, 1934, that the Circuit Court of Appeals for the Third Circuit handed down its decision of affirmance in the appeal from the District Court for the West-

ern District of Pennsylvania, dismissing a petition of the Selden Company (the alleged infringer in the previous litigation hereinbefore referred to), for leave to file a supplemental bill praying, among other things, for an injunction to restrain the plaintiff in the present suit from prosecuting the same. Selden Co. v. General Chemical Co. (C. C. A.) 73 F.(2d) 195, decided September 26, 1934. In short, defendant was justified in waiting until it was definitely determined whether the present suit was to be enjoined. It placed reliance upon Kessler v. Eldred, 206 U. S. 285, 27 S. Ct. 611, 51 L. Ed. 1065, in which the Supreme Court held that where the product of a manufacturer has been held not to infringe a given patent, the manufacturer has the right to require that his customers be not harassed by the patent owner with suits on the same patent, although the Circuit Court of Appeals held that this decision was not applicable on the facts, deciding that it was not apparent that the catalyst, which is alleged to infringe in the present suit, and the process of its manufacture, are identical with the catalyst and the process of manufacture covered in the Pennsylvania case, and that, therefore, the Pennsylvania court was without jurisdiction to try the issues as to the processes and catalysts involved in the Maryland suit. Five days after this decision, defendant moved for leave to file an amended answer which specifically raised this question of undue delay in disclaiming and was, in effect, a motion to dismiss the bill; such leave was granted, and on the same day (October 1, 1934) the amended answer was filed.

For the aforegoing reasons, the motion to dismiss the bill of complaint must be granted.