## GENERAL CHEMICAL CO. v. STANDARD WHOLESALE PHOSPHATE & ACID WORKS, Inc.

No. 4397.

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1939.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

W. Brown Morton, of New York City (R. Contee Rose, of Baltimore, Md., and H. Stanley Mansfield, of New York City, on the brief), for appellant.

Clair W. Fairbank, of New York City (Venable, Baetjer & Howard, of Baltimore, Md., William R. Perkins, of New York City, and Robert Ames Norton, of Stamford, Conn., on the brief), for appellee.

PARKER, Circuit Judge.

This is the second appeal in a suit brought by the General Chemical Company to enjoin infringement of United States Reissue Patent No. 19,282 to Slama and Wolf. See 4 Cir., 77 F.2d 230. The patent sued on is a reissue of patent No. 1,371,004, from which claim seven was dropped after being held invalid by the Circuit Court of Appeals of the Third Circuit in a suit by the General Chemical Co. against the Selden Company. In that suit the other claims of the patent were held valid but not infringed. General Chemical Co. v. Selden Co., D.C., 60 F.2d 144, affirmed, 3 Cir., 67 F.2d 133.

The patent covers a catalyst containing vanadium in chemical combination distributed on a finely divided carrier, not exceeding 60 microns in diameter, for use in the production of sulphuric anhydride, commonly known as sulphuric acid, from sulphur dioxide and oxygen, and also the process of manufacturing this catalyst. The Selden Company, defendant in the Third Circuit case, was charged with infringement of both the product and the process claims of the patent in the manufacture of vanadium bearing pellets for use as a catalyst in the production of sulphuric acid; and it was held that neither class of claims was infringed. The defendant here is a manufacturer of sulphuric acid; and it is charged with infringement of the patent because it uses as a catalyst, in the process of manufacturing such acid, vanadium bearing pellets purchased from the Selden Company prior to the institution of the Third Circuit suit. The manufacture and sale of these pellets was necessarily included in the infringement charged in that suit; for it covered the entire manufacture of the Selden Company since 1927. 60 F.2d at page 147.

While plaintiff contends that the catalyst used by defendant does not correspond to the findings of the court with respect to the catalyst held not to infringe in the Third Circuit, there can be no question but that the catalyst here charged as an infringement was the same catalyst as was there charged to infringe, that it was manufactured by the defendant there, that the manufacture thereof was embraced in the charge of infringement, and that it was held not to infringe. In the view that we take of the case, therefore, the only question that need be considered is the estoppel raised by the judgment in the Third Circuit; i. e. is it conclusive against plaintiff in a suit instituted against a purchaser from the defendant in that suit of the product there held not to infringe? We think that it is.

It is to be noted that the defendant here sustains a relation of privity to the Selden corporation with respect to the vanadium pellets alleged to be an infringement of the patent, for the reason that the defendant purchased them from the Selden Company and succeeded to that company's right and title thereto. It was stated at the bar of the court that the Selden Company had indemnified defendant against loss on account of patent infringement and that the Selden Company was defending this suit in behalf of defendant; but, irrespective of this, the implied warranties involved in the sale of personal property include a warranty of the right to use, upon which the purchaser may rely if sued for patent infringement. The Electron, D.C., 56 F. 304, 309, 310; 55 C.J. 783. In the event of a recovery by plaintiff against defendant, therefore, defendant would have the right, if plaintiff's position is correct, to sue the Selden Company on this implied warranty; and the unseemly spectacle would be presented of permitting a patentee

by indirection to recover damages for infringement from a manufacturer who, in a suit brought against him directly by the patentee, had been held not to infringe the patent. In such case we think that the patentee is estopped by the judgment in favor of the manufacturer from recovering damages on account of infringement from persons who have purchased from the manufacturer the articles which are alleged to infringe but which in the judgment have been held not to infringe.

In Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065, it was held that a manufacturer of articles alleged to infringe a patent, who had prevailed in an infringement suit brought against him by the patentee, might enjoin the latter from prosecuting infringement suits against his customers. The equity jurisdiction was based on protecting the manufacturer's business against irreparable injury by the institution of such suits; but the conclusion that the business of the manufacturer was entitled to this protection can be sustained only on the theory that, after the finding of non infringement as to the manufacturer, the patentee was estopped to claim infringement as to persons who purchased the alleged infringing articles from him, as otherwise the court would be in the position of enjoining one from prosecuting a suit which he had a right to prosecute. While the court did not pass upon the right of the customer to assert such estoppel, the language used seems to us to leave little doubt as to the existence of the right on their part. The Court said [page 612]:

"This judgment, whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settled finally and everywhere, and so far as Eldred, by virtue of his ownership of the Chambers patent, was concerned, that Kessler had the right to manufacture, use, and sell the electric cigar lighter before the court. The court, having before it the respective rights and duties on the matter in question of the parties to the litigation, conclusively decreed the right of Kessler to manufacture and sell his manufactures free from all interference from Eldred by virtue of the Chambers patent, and the corresponding duty of Eldred to recognize and yield to that right everywhere and always. * * * The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims for damages on account of the use of them would be to diminish Kessler's opportunities for sale. No one wishes to buy anything if with it he must buy a law suit. That the effect to be anticipated was the actual effect of the Breitwieser suit is shown by the statement of facts. Kessler's customers ceased to send orders for lighters, and even refused to pay for those which had already been delivered. Any action which has such results is manifestly in violation of the obligation of Eldred, and the corresponding right of Kessler, established by the judgment. Leaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone. The judgment in the previous case fails of the full effect which the law attaches to it if this is not so."

 Following the decision in Kessler v. Eldred, supra, this court held that the manufacturer, successful in an infringement suit, should be permitted to intervene in a suit brought by the patentee against one of the manufacturer's customers and have the suit dismissed on the sole ground of the prior adjudication. Stoehrer & Pratt Dodgem Corp. v. Glen Echo Park Co., 4 Cir., 15 F.2d 558. And the same holding was made by the late Judge Connor, one of the ablest judges of this Circuit, in Continuous Extracting Press Corp. v. Eastern Cotton Oil Co., D.C., 264 F. 340. And Judge Woolsey, in the Southern District of New York, held that the manufacturer, who in a suit by the patentee had been held not to infringe, might intervene in a suit brought by the patentee against one of the manufacturer's customers for the purpose of protecting the customer. Hewes & Potter v. Meyerson, D.C., 36 F.2d 1001. Certainly, if the suit against the customer may be dismissed upon the intervention and at the request of the manufacturer, there is no valid reason why it may not be dismissed upon the motion of the customer himself. Since the customer can hold the manufacturer from whom he has purchased for any damage which he may be required to pay because the article infringes the patent, he should be held to be subrogated to the right of the manufacturer under the judgment against the patentee adjudging that there is no infringement with respect to such article. The customer, in such case, is in a position closely analogous to that of a surety who, if re-

quired to pay, may recover against the principal; and it is familiar learning that any defense which would avail the principal may be asserted by the surety. 21 R.C.L. 1077. And a judgment in favor of the principal protects him. Kramer v. Morgan, 2 Cir., 85 F.2d 96; Gill v. Morris, 11 Heisk., Tenn., 614, 27 Am.Rep. 744; State v. Coste, 36 Mo. 437, 88 Am.Dec. 148; 50 C.J. 93.

■ We are familiar with the holding in the case of Wenborne-Karpen Dryer Co. v. Dort Motor Car Co., 6 Cir., 14 F.2d 378, to the effect that the customer may not rely upon the judgment of non infringement in favor of the manufacturer; but with due respect to the Court that rendered that decision, we think that it pressed too far the requirement of mutuality of estoppel and that the strong dissenting opinion of Judge Donahue expresses the sounder view of the law. There are recognized exceptions to the doctrine that estoppels must be mutual; and we think that a case of the character that we have here falls within the exceptions. The purchaser of a manufactured product should not be barred, of course, from defending a suit brought against him by a patentee for infringement by a finding of infringement against the manufacturer, for the very good reason that he has had no opportunity to be heard with respect to infringement in the suit against the manufacturer. But the same reasoning does not apply where the facts are reversed and the case is one where the patentee, having lost in his litigation against the manufacturer, brings suit against the latter's customers. The patentee, in such case, has had his day in court with respect to the subject matter of the litigation, and non infringement has been solemnly adjudicated with respect to it. To hold that he is bound by the judgment in suits against other parties with respect to the same subject matter, does him no injustice and prevents unseemly conflict of decision and useless prolonging of a controversy which has been decided against him by the courts.

In Portland Gold Mining Co. v. Stratton's Independence, 8 Cir., 158 F. 63, 16 L.R.A.,N.S., 677, Mr. Justice (then Circuit Judge) Van Devanter considered the necessity for mutuality of estoppel in a case of trespass in which a judgment had been rendered in favor of another one of the alleged trespassers, and held that the plaintiff was estopped by the judgment and that defendant might have the benefit of it although he would not have been bound by it if it had been the other way. The learned judge, after a full discussion of the authorities, sums up the holding of the decision in these words [page 68]: "Thus it is settled by repeated decisions that the general rule that one may not have the benefit of a judgment as an estoppel unless he would have been bound by it had it been the other way is subject to recognized exceptions, one of which is that in actions of tort, such as trespass, if the defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel, even though he would not have been bound by it had it been the other way. And we think it could not well be otherwise, for, when the plaintiff has litigated directly with the immediate actor the claim that he was culpable, and, upon the full opportunity thus afforded for its legal investigation, the claim has been adjudged against the plaintiff, there is manifest propriety, and no injustice, in holding that he is thereby concluded from making it the basis of a right of recovery from another who is not otherwise responsible. To such a case the maxim, 'Interest reipublicæ ut sit finis litium,' may well be applied."

One of the cases relied upon by Mr. Justice Van Devanter, and from which he quoted at length, is Atkinson v. White, 60 Me. 396. That case is very much in point here, for it involved successive suits with respect to personal property which had been purchased with warranty of title. Having failed in a suit against the purchaser, plaintiff, who claimed ownership, sued the seller; and the latter pleaded the judgment in favor of his warrantee. In holding plaintiff estopped by the former judgment, the court said: "That the question involved in each suit is precisely the same, and to be proved by the same testimony is beyond a doubt. It is equally clear that the plaintiff is the same, and that he has had his day in court. He has had a full hearing upon the law and fact involved in the very question he now proposes to try again in another suit. He has had every privilege the law allows him, unless he is entitled to another hearing, simply because he is now attempting to enforce his claim against another defendant in name, indeed, but the same in interest. Ordinarily judg-

ments have been held conclusive only between parties and their privies, and only when both parties are bound. But this rule is subject to exceptions; as in the case of an alleged trespass by two persons, when one acts as servant of the other, and by his command. Such persons are not privies, and yet if the plaintiff fails in his action against one, he is precluded by that judgment from maintaining an action for the same trespass against the other."

Another case cited by Mr. Justice Van Devanter is Emma Silver Mining Co., Limited v. Emma Silver Mining Company of New York, C.C., 7 F. 401, in which one of the questions involved was whether a judgment in favor of an agent charged with fraudulent conduct would estop plaintiff from relying upon the same fraud in a subsequent suit against the principal. In holding that it would, Judge Choate said [page 407]: "It is contended on the part of the complainant that, whatever may be the effect of the judgment as to Park and Baxter, the defendant corporation cannot avail itself of the judgment as a bar, or as a conclusive determination of the facts, because the defendant corporation was not a party to that suit. The weight of authority, however, is that where an agent in a transaction is sued after the termination of his agency, and upon a trial of the merits the issue is determined against the plaintiff, the principal, though not a party to the suit, can avail himself of the judgment as a bar, when he is sued by the same plaintiff on the same cause of action. While the principal, if he had no notice of the former suit, and no opportunity to defend it, may not be concluded by a judgment against his former agent, or made responsible for the agent's bad pleading or blunders in the trial of the cause, because so to conclude him would be to deprive him of his property without due process of law, yet, as regards the plaintiff who has before sued the agent and been defeated, there is no reason why he should not be concluded upon that principle of public policy which gives every man one opportunity to prove his case, and limits every man to one such opportunity. He has had his day in court, and it is immaterial whether he has chosen to test his right as against the principal or the agent in the transaction, provided the issue to be tried was identical as against both."

We see no reason why the principle applied in the cases cited should not apply in a case such as this. It is suggested that there is a difference between infringement in manufacture and infringement in the use of the manufactured articles and that a separate action can be maintained against the user for the infringing use. This is true, of course, but it is also true that the facts necessary to show that the article infringes are the same in the one case as in the other and there is no reason why the patentee who has lost in his suit against the manufacturer should be permitted to try virtually the same case over again as many times as he can find purchasers of the manufactured product. Having had his day in court on the question as to whether the product of the manufacturer infringes, he should in all subsequent litigation be bound by the judgment rendered against him with respect to that question.

And it makes no difference, we think, that the product may have been purchased prior to the institution of the suit against the manufacturer. A judgment, it is true, is binding upon privies in interest or estate only in the event that they acquired their interest or estate subsequent to the judgment or pendente lite; but this rule is pertinent only where it is sought to bind the successor in interest or estate by a judgment against his predecessor. It has no application here, where the estoppel invoked is against the patentee against whom a finding of non infringement has been made. The determinative fact is that non infringement was found with respect to the particular product in a suit between the patentee and the person from whom the product was purchased. The fact that the product was manufactured and sold prior to the institution of the suit against the manufacturer strengthens, rather than weakens, the position of defendant; for the result of this is that the very article involved in the suit against the purchaser has been held in the suit against the manufacturer not to be an infringement. The identical question was before the Circuit Court of Appeals of the Ninth Circuit in Norton v. San José Fruit-Packing Co., 9 Cir., 83 F. 512; and that court applied the doctrine of estoppel to preclude the patentee in a suit against the purchaser from the manufacturer. The court said [page 514]:

"The general proposition that a judgment or decree of a court of competent jurisdiction between the same parties, and all parties privy thereto, upon the same issues, is, as a plea, a bar, or as evidence

conclusive, is well settled. Whenever a cause has been once fairly tried, fully heard, and finally decided, upon its merits, by a competent tribunal, the same questions, as between the same parties or their privies in interest, ought not to be tried over again. They should be considered as forever settled. This rule is necessary for the repose of society. It is in the interest of the public, as well as of the parties, that there should be an end of litigation. It is easy to understand and appreciate the beneficial results which flow from a strict observance of this principle, and to realize the injury which might arise by any relaxation of the rule. In a proper case for its application, courts of justice will not permit the rule to be called in question by any supposed hardship which might exist in any particular case, but will inflexibly adhere to it, regardless of consequences. * * *

"It is, however, claimed by appellants that the facts do not bring this case within the general rule, because it distinctly appears therefrom that the sale of the alleged infringing machine by Jensen to the appellee was prior to the commencement of the suit of Norton v. Jensen in the district of Oregon; that the decree rendered in this court in Machine Co. v. Norton, January 28, 1895, long after the commencement of this suit, is not a bar to this suit, and cannot be held to estop appellants from the consideration of their appeal upon its merits. In Freem. Judg. § 162, the author, in discussing the question as to who are privies to a judgment or decree, said: 'It is well understood, though not usually stated in express terms in works upon the subject, that no one is privy to a judgment whose succession to the rights of property, thereby affected occurred previously to the institution of the suit.' See, also, Keokuk & W. R. Co. v. Missouri, 152 U.S. 301, 314, 14 S.Ct. 592 [38 L.Ed. 450], and authorities there cited. But, if it be true that a technical bar or estoppel has not been shown, the facts are of such a character as to justify this court in affirming the judgment of the circuit court, without entering into any discussion of the merits of the case. The appellee purchased its machine from Jensen. It is the same machine as was involved in Machine Co. v. Norton [supra]. This court held in that case that the machine in question did not infringe upon any of the Norton patents therein involved. [9 Cir.], 14 C.C.A. 383, 67 F. 236. *If the manufacturer of the machine did not, by the making, use, or sale*

*of it, infringe upon any of Norton's patents, it must necessarily follow that the party who purchased the machine, either before or after the suit in question, cannot be held guilty of an infringement by the use of the same identical machine.*" (Italics supplied.)

 Contention is made that defendant may not rely upon the estoppel of the Third Circuit judgment for the reason that following that judgment the Selden Company made application for an injunction under Kessler v. Eldred, supra, to restrain the prosecution of the suit here and same was denied. Selden Co. v. General Chemical Co., 3 Cir., 73 F.2d 195. We think this contention is without merit. The injunction was refused in the court's discretion because upon the affidavits filed it might reasonably be concluded that the issues involved were not the same. As stated above, the evidence taken in the court below shows that the issues were the same as in the Third Circuit suit; and the refusal of the injunction to the manufacturer is no reason to deny the defense of res adjudicata to the customer now that that fact has been determined.

For the reasons stated, the decree dismissing the bill should be affirmed.

Affirmed.