## MAGAZINE REPEATING RAZOR CO. v. READ DRUG & CHEMICAL CO.

### No. 2558.

District Court, D. Maryland.
Nov. 6, 1939.

Marbury, Gosnell & Williams (by William L. Marbury, Jr.), of Baltimore, Md., and John Hilliard, Wallace H. Martin, and Stewart W. Richards, all of New York City, for plaintiff.

Barton, Wilmer, Bramble, Addison & Semans (by Randolph Barton, Jr., and F. Fulton Bramble), of Baltimore, Md., and Abraham Tulin, of New York City, for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a trade mark and unfair competition case. The plaintiff asks specifically for the following relief: A decree permanently enjoining the defendant, and all persons acting on its behalf, (1) from using the word "Schick," or any other word or mark confusedly similar thereto, as a trade mark or trade name, or in any other manner, in connection with the sale, advertising, or offering for sale of razors, shaving equipment, or shaving paraphernalia of any kind, not made by complainant; (2) from doing any other acts calculated to cause any products not made or sold by complainant to be passed off as and for complainant's products, and from in any manner infringing complainant's trade mark rights in the trade mark "Schick", or unfairly competing with the complainant in any manner. There is also the usual request for an accounting for damages and profits, and for any other relief that the Court may feel the complainant is entitled to.

It will thus be seen that, briefly summarized, the complainant's contention is that it is entitled to pre-empt the entire field of razors, shaving equipment, or paraphernalia of any kind as respects the use of the name "Schick". The present controversy has as its real basis the fact that another company, Schick Dry Shaver, Inc., from which the present defendant buys, is the manufacturer and distributor of an electrically driven shaving device, known generally as "Schick Dry Shaver", which has been very successful commercially.

Whatever might otherwise have been the rights of the present plaintiff in the word "Schick", by virtue of common law rights, or of any statutory registration of its trade mark, this Court finds that its rights are determined, for the purposes of this case, by a series of written contracts entered into between it and its predecessor company, the Sharp Manufacturing Corporation, and the inventor of the Shick Dry Shaver, Colonel Jacob Schick. All of these contracts were in issue and directly passed upon in a suit brought by the present plaintiff and its Canadian affiliate, Magazine Repeating Razor Company of Canada, against Schick Shaver, Ltd., a Canadian company, which wholly owns the stock of the Schick Dry Shaver, Inc.; this suit having been brought in the Exchequer Court of Canada, and the opinion having been rendered on February 7th last, but, as is stipulated in the present case, no decree therein has yet been signed. Mr. Justice MacLean in that decision, having analyzed so carefully, and, as this Court thinks, so correctly, those contracts, I adopt his construction of them, and have made, largely from his opinion, the following resume of his findings with respect to them.

In 1925, an agreement was entered into between Schick and the Sharp Manufacturing Corporation, wherein Schick agreed to transfer to that Company the patent which he then owned and his several pending patent applications, the consideration being the payment of money and certain royalties. The Sharp Manufacturing Corporation was to have the exclusive right to manufacture, and to sell throughout the world, safety razors and blades covered by such patent and patent applications.

In this agreement, Schick assigned to the Sharp Manufacturing Corporation all trade marks, trade names and all other privileges relating to such safety razors and blades. In the event of default of the Sharp Manufacturing Corporation in respect of the conditions of the agreement, that corporation was to convey and deliver back to Schick any patents or patent applications, and any and all rights which it had acquired by virtue of this agreement.

In May, 1927, a second agreement, supplemental to that of 1925, was entered into between Schick and the present plaintiff, which is the same company that had formerly been known as the Sharp Manufacturing Corporation, wherein Schick agreed to transfer to the plaintiff further applications for patents and inventions which he had made since the date of the first agreement, and which related to safety razors and their blades, and also certain inven-

tions and discoveries in connection with razors or blades or machinery or processes for manufacturing same, and for which he had not yet filed an application for letters patent in the United States. One of the terms of that agreement was as follows: "Schick agrees that the corporation may use the name 'Schick' in connection with the razors, blades and other articles, on the sale of which royalties are payable under the provisions of this paragraph IV, and that such razors, blades or other articles. may be marked or associated with the name of 'Schick'."

This agreement also provided that in the event of any default in the payment of royalties or any deficiency under paragraphs IV and V of the agreement, Schick had the right, upon giving a written notice of such default, and if the default continued for a stated period, to terminate the agreement, in which event the plaintiff obligated itself, inter alia, to assign and transfer back to Schick all letters patent and applications for letters patent, acquired from Schick under this agreement and the agreement of 1925, "and also the right to use the name 'Schick' in connection with the manufacture and sale of razors, blades, and other articles."

Schick also agreed in paragraph XI of this same agreement that if, during the life of the agreement, he should "make any invention or discovery relating to the art of shaving, other than inventions or discoveries relating to razors or blades or machinery or process for the manufacture thereof", he would disclose the same to the plaintiff, and make and file applications for letters patent thereon in the United States and such foreign countries as he deemed advisable, and would assign such applications for letters patent to the plaintiff, upon the terms provided in that agreement.

At the time that this latter agreement was entered into, Schick was engaged in developing his shaving machine. On January 1, 1929, two agreements were entered into between Schick and the plaintiff, in one of which the razor company released Schick from his obligation under paragraph XI of the agreement of 1927 previously referred to, in so far as that paragraph applied to "shaving machines," that term as there used having reference to Schick's electrical dry shaver, as distinguished from the safety razors which were Schick's earlier inventions. The other agreement of the same date is designated as a license agree-

ment. At this time Schick was the owner of the letters patent relating to an electrical shaving machine, and he also had applications for a patent pending, covering the same subject matter. This shaving machine had been given the name "Schick's Dry Shaver", and the license agreement states that the expression "Schick's Dry Shavers" was used to describe shaving machines, and a brief description is given therein of such machines. Schick. licensed the plaintiff to manufacture and sell in the United States and foreign countries, under the name of Schick, the shaving machine. disclosed in his patents and all patent applications relative to the same; and the licensee, the plaintiff, agreed that all shaving machines which it or its agents might manufacture would be marked with the name "Schick", and that they would be advertised, offered for sale and sold under the name "Schick."

This license agreement further provided that if the plaintiff defaulted in its covenants under the agreement, Schick might terminate the license after notice of such default as described by the agreement, and the plaintiff, on written notice, might also terminate the license agreement on any one of the several dates therein specified. If the licensee terminated the license agreement, the plaintiff obligated itself to transfer and deliver back to Schick the entire business or businesses of manufacturing and selling shaving machines then conducted by it, or any of its agents, the goodwill thereof, and "all trade-marks and trade names used exclusively in connection therewith", including "the exclusive right to use the name of Schick upon or in connection with shaving machines, * * *."

Thereafter, the plaintiff having embarked upon the manufacture of Schick's dry shaver in an experimental way, as of July 1, 1930, it terminated the license agreement, and in May, 1930, another agreement was entered into between the same parties whereby certain mutual relations were agreed upon, and the plaintiff agreed that "all rights relative to Schick Dry Shavers and shaving machines * * * heretofore granted to it by Schick under said agreement dated January 1, 1929, is now terminated and at an end."

It is the contention of the plaintiff in the present suit that, in spite of the terms of the agreements which have thus been analyzed, the plaintiff has what might be called an additional, or predominant right,

not controlled by those contracts, to the entire shaving-instrument field because—to summarize briefly—it was the first to use the name "Schick" in any part of that field; and that when it turned back to the inventor, Jacob Schick, all rights in his electrical device, it did not surrender any right that it had previously acquired to use the name "Schick", and that therefore it was entitled to the entire field with respect to the use of that name.

With this contention this Court can not agree. These carefully prepared instruments are not in any sense ambiguous. They must speak for themselves. To decide in favor of the plaintiff would be tantamount to declaring that there is some principle of trademark law which persists and survives in spite of the solemn declarations of the parties to the contrary. In other words, as this Court views the contention of the plaintiff, it is tantamount to saying that principles of contract law are set aside and the mutuality, the meeting of the minds of the parties, is not to be given its full force and effect since it would be beneficial to the plaintiff to do otherwise.

When the plaintiff terminated its license to manufacture and sell the Schick dry shaver or electrical shaving machine, Schick proceeded to organize a company known as Schick Dry Shaver, Inc., to manufacture the articles, and in the course of time it became widely sold, advertised and known as the "Schick Shaver". Meantime, the plaintiff itself advertised and sold extensively its safety razor under the name of "Schick Injector Razor", and "Schick Repeating Razor." The various types of plaintiff's razors are in evidence, and likewise the cartons, labels, and books of instructions that go with them.

It is obvious that the relation between the parties in the production of their respective articles, as required by the series of agreements just analyzed, was bound to lead to considerable confusion at times. The evidence bears that out. It is self-evident that where two parties, whether in the same field or selling unrelated articles, use the same name—especially if it is a "catchy" and unusual name—some confusion will arise; and I find that since such confusion in the present case is the direct result of the fully intended, carefully prepared and executed agreements, the parties must therefore accept the consequences. Such being true, it becomes unnecessary to analyze the character of the confusion. Suffice it to quote the following from the opinion in the Canadian case, because it is an accurate statement of substantially what is disclosed in the present case: "From time to time complaints would be made by the razor company over the form which certain advertising of Schick's Dry Shaver, Inc., was taking, possibly, at times with some cause, and which it was claimed was calculated to cause confusion in the public mind as to the origin of the respective articles. But, it would seem that any differences arising from such or other causes would be composed quickly, and for a long time friendly relations between the two companies continued; in fact, some persons were shareholders in both companies, and all concerned seemed anxious that any confusion arising from the use of the word 'Schick' by both companies should be avoided or reduced to a minimum. It is fairly clear that when Schick's Dry Shaver came on the market neither party suspected that any confusion could or would arise by reason of the use of the word 'Schick', each having in mind, no doubt, the dissimilarity between the two articles in question. It was not until June, 1937, that a definite breach occurred, and then Schick Dry Shaver, Inc., was advised that its use of the word, 'Schick', was a direct infringement of the razor company's trademark, and that it would take such steps as were deemed necessary to protect its rights under such mark."

To repeat, as was found by the Canadian court, and as this Court now finds, the parties were in agreement that a distinction was to be drawn between the Schick safety razor and the Schick shaving machine—between the safety razor and the electrically operated dry shaver—that the one did not comprise or mean the other, and consequently they were differentiated by express agreement. There can be no doubt that the expression "Schick's Dry Shavers", was used to designate electrical shaving machines. The licensing agreement makes this perfectly clear. Schick first authorized the use of his name in connection with the safety razor and blade. The 1927 agreement states that the same "may be marked or associated with the name of Schick," and it is not believed that anything else was contemplated than that the plaintiff might so mark or associate its safety razors and blades. In short, I find it impossible, as did the Canadian Court, to read into the 1927 agreement anything more than that the plaintiff was to

have the right to use the name "Schick" in connection with the safety razors and blades covered by the Schick patent and patent applications referred to in that agreement, so long as the plaintiff made and sold the same under the terms of that agreement. However, plaintiff later acquired the Schick patents and patent applications covering such safety razors and blades, and the right to use the name "Schick" thereon is no longer in question, and in fact is conceded by the present defendant, as it was by the defendant in the Canadian case. As we have seen, in 1929 Schick granted a license to the plaintiff to manufacture and sell his dry shaver, on condition that it be marked with his name. The compulsory use of the name "Schick" in connection with dry shavers was the condition imposed by Schick, and this Court finds, as did the Canadian Court, that the acceptance of that condition was an admission, indeed an agreement, that Schick had a right to have his own name on his dry shaver if he so chose; and then when the license was terminated by the plaintiff, it agreed to and did surrender to Schick the rights which it had acquired under the license.

■ As was said in the Canadian case, and directly applicable to the present situation: "Now, if the owner of a patent licenses another to make his invention, and requires as a term of the license that the inventor's name be marked on the article invented, and which condition the licensee accepts, and the licensee later terminates the license and surrenders back to the licensor all rights acquired under the license, surely the licensor is free to make and sell his invention, with his name marked thereon. How could it be said that the licensor, in that state of facts, would be infringing any mark of the licensee?"

This Court has been referred to no case which appears to be contrary to that conclusion. The following additional statement of the Canadian Court is directly applicable to the present case: "I think the agreements are to be construed as meaning that Schick gave the razor company the right to use his name only in connection with the safety razors and blades covered by the agreement of 1927, and that he licensed the razor company to manufacture and sell his dry shaver upon terms, one of which was that the dry shaver should carry the mark of his name, so long as the same was manufactured and sold by that licensee. But, the license was terminated by the razor com-

pany, and accordingly its obligation or right to use the name of Schick in connection with shaving machines concurrently terminated, and the licensor's right to use his own name thereon was restored to him."

As part of the relief asked by the plaintiff in this case, the following is sought, which raises a question distinct from that involved in the primary conclusion reached, as just explained, that is to say, there is also sought an injunction against the defendant, its agents and employes, against saying anything or doing anything in the sale of the respective products which would confuse the respective purchasers as to the two products.

■ It is true that there is a large amount of uncontradicted testimony in the present case that salesmen and saleswomen of the defendant, when approached by prospective buyers, stated—usually not unless asked—that the plaintiff's article and the Schick dry shaver, were made by one and the same company, and it is on the basis of such evidence that the plaintiff claims it is entitled, in any event, to injunctive relief of the character just stated. It is to be noted, however, that there is no claim that any one other than clerks of the defendant company had anything to do with these misstatements, or that they were in fact brought to the attention of any of the defendant's officers until the time, or nearly so, that the present litigation began. Furthermore, there is no evidence that any responsible person connected with the defendant company has done other than to co-operate in preventing any further confusion. In view of these facts, although there may be instances when an injunction should issue against future conduct of this kind, because of repeated violations, this Court is not willing to issue an injunction against the defendant on the present state of facts. Such seems unnecessary and an unwarranted extension of the principles that should govern the use of the injunction jurisdiction of the Court.

■■ In addition, the plaintiff claims that it is entitled to an order of this Court, requiring defendant at all times to refrain from selling, or offering for sale, any of the Schick Dry Shaver, Inc., articles unless their cartons or containers,—of whatever kind they may be, inside or outside containers,—and the articles themselves, as well, contain an express statement that the two companies, the plaintiff company and the Schick Dry Shaver, Inc., are distinct. How-

ever, the Court does not believe that, on the evidence, the plaintiff is entitled to such an order. It is true, the plaintiff contends, —and correctly,—that it was first in the field,—first to have the right to use the name "Schick". Therefore, neither the present defendant nor the company that manufactures its products, nor any one else, should be permitted to do anything that will impair that right in the field where that right exists. But I do not find that what has been done has impaired that right, and I think it is sufficient if the name of the article, and its manufacturer's name, are clearly placed upon both the carton and the article. I do not believe, in view of all the circumstances in this case, that the plaintiff has any right to impose upon the defendant, or upon the Schick Dry Shaver, Inc., were it before me as defendant, any greater obligation with respect to avoiding confusion in the public mind, than has the defendant, in turn, to impose upon the plaintiff, and, again, this is because of the agreements which control the case.

We now come to the final question: Do both the Schick Dry Shavers and their containers, and the plaintiff's articles and their containers meet the requirements that have just been laid down?

There are two exhibits of plaintiff's articles which do not appear to meet those requirements, one is plaintiff's exhibit No. 30, the carton containing Life Buoy Shaving Cream and Schick Injector Razor with eight blades; and the other is plaintiff's exhibit 6, being the interior kit and contents,—the contents being the Schick Injector Razor in a metal case. Neither of those containers bears the name of the plaintiff, although the razors do. The Court therefore will require that the plaintiff's name hereafter appear on any such cartons or containers hereafter placed on the market.

Two other exhibits, defendant's exhibit 2, being a large and rather handsome paper carton containing the Schick Repeating Razor, and another, plaintiff's exhibit 23, a container for the Schick Injector Razor, "Popular Kit, Dollar Pack", do contain the name of the plaintiff, Magazine Repeating Razor Company, on the bottom of each carton. That is believed by the Court to be sufficient, but nothing short of that, in equally conspicuous type somewhere on the box or container will be sufficient.

Coming, then, finally, to a consideration of whether defendant's articles, boxes or containers, meet the requirements here laid down, it has already been stated that the precise differentiation urged by the plaintiff will not be required, but in order that such requirements as are imposed shall be mutual, the Court will direct that the defendant shall not market any more Schick Dry Shavers without the name of the manufacturer, that is, the Schick Dry Shaver, Inc., on both the article itself and upon its container, subject, however, to the exception hereinafter explained. It is not necessary or reasonable to require that the inside carton or kit, whether it be of leather or of some other material, shall also bear the name of the manufacturer; but the outside carton, of whatever kind, should bear that name. This requirement is fully met by defendant; but defendant's article itself must also bear the manufacturer's name, and in this respect defendant fails to meet the requirement. All that is now on the Schick dry shaver is a simulation of a globe with the word "Schick" around it on a belt, under it the word "shaver", and then certain references to the power of the machine and a patent mark.

It is of course true that this Court, in this proceeding, has no jurisdiction over the Schick Dry Shaver, Inc., because it is not a party to the proceeding, and what this Court is now requiring can only apply to the defendant, the purchaser from that company. Also, these requirements that are imposed upon both the defendant and the plaintiff should not be imposed so as to cause any undue hardship. Therefore, withdrawal of such merchandise as is already on the market, for the purpose of making it conform to the requirements here laid down, will not be required. Nor will these requirements be imposed upon merchandise already actually fabricated or assembled, but not yet distributed for sale.

In view of the conclusions here reached, it becomes unnecessary to consider the various other questions raised at the hearing, except that the existence, character and present status of the Canadian litigation seems to make it appropriate for this Court to make the following observations. It is stipulated in the present case that no decree has as yet been entered in the Canadian suit, although the decision was rendered some eight months ago. In the absence of a decree or judgment, what was decided by the Canadian Court can not, of course, be treated as an estoppel in the present case. However, were the Canadian decree or judg-

ment now in existence, query whether it would not operate as an estoppel upon the present plaintiff, for the following facts are very significant. It appears from the opinion in the Canadian case, and is not denied in the present suit, that the Canadian defendant, Schick Shaver, Ltd., wholly owns the stock of the American company, Schick Dry Shaver, Inc., which is the manufacturer for and sells to the defendant in the present case, the Read Drug & Chemical Company. Also, the present plaintiff, Magazine Repeating Razor Company, is one of the plaintiffs in the Canadian case. This Court recently decided, and was upheld by the Circuit Court of Appeals for the Fourth Circuit, that a patentee is estopped, by a judgment in favor of a manufacturer, from recovering damages on account of infringement by a purchaser, from such manufacturer, of articles which that prior judgment held were not infringed. See General Chemical Company v. Standard Wholesale Phosphate & Acid Works, 101 F.2d 178. While patent, and not trade mark, rights were there involved, on principle we see no ground for distinction; and in the present case the defendant is to be treated as a purchaser from the defendant in the Canadian suit, namely, Schick Shaver, Ltd., because the latter company wholly owns Schick Dry Shaver, Inc., from which the present defendant is a purchaser of the same products as those involved in the Canadian suit.

Query, likewise, whether it should make any difference that the suggested estoppel would arise by virtue of a decision of a foreign and not of an American court; or that such foreign court is not the one of last resort. Likewise, while it is true that the Canadian suit was brought under the Canadian Trade Mark and Design Act, which, of course, is not involved in the present suit, the Canadian Court did expressly decide that the present plaintiff has no right in the trade mark "Schick" as applied to "shaving machines", that is, to electrically-operated dry shaving apparatus, and this decision was reached as a result of the construction placed upon the very same agreements involved in the present suit, all of them executed in the United States and having no more reference, expressed or implied, to the laws of Canada, statutory or otherwise, than to the laws of the United States. In short, by reason of the aforementioned facts, the present litigation appears to be premature, to say the least, and to be productive of undue prolongation and repetition of the same controversy.

A decree will be signed in accordance with this opinion, together with a separate statement of findings of fact and conclusions of law.